## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORMA DIANE FRITZ,<br>**Plaintiff,**<br><br>v.<br><br>CAPITAL MANAGEMENT SERVICES, LP,<br>**Defendant.** | )<br>)<br>)<br>)   **2:12-cv-1725**<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OPINION AND ORDER OF COURT</u>

Presently before the Court is DEFENDANT CAPITAL MANAGEMENT SERVICES, LP'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26), with brief in support (ECF No. 27). In response, Plaintiff has filed PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31), also with brief in support (ECF No. 30). The issues have been fully briefed and the factual record has also been thoroughly developed via the STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT CAPITAL MANAGEMENT SERVICES, LP'S MOTION FOR SUMMARY JUDGMENT (ECF. No. 28) and the STATEMENT OF DISPUTED MATERIAL FACTS filed by Plaintiff (ECF No. 29). The motion is, therefore, ripe for disposition.

### I.      Factual and Procedural History

The facts of this case are fairly straightforward. Norma Diane Fritz ("Plaintiff") is a credit card accountholder at Chase Bank ("Chase"). App. to Def.'s Concise Stmt. of Material Facts, Ex. 2-D (ECF No. 28-2). On November 4, 2010, Chase retained Capital Management Services, LP ("Defendant") to collect an unpaid balance of $13,334.33 on Plaintiff's account. Def.'s Concise Stmt. of Material Facts ¶ 5.

According to the affidavit of Kim Flitt, Defendant's chief customer advocate, once an account is placed with the Defendant, the accountholder's credit profile is automatically accessed. *Id.* ¶ 8. In this case, upon placement with Defendant, the account was identified as belonging to Plaintiff. *Id.* ¶ 9.

On November 6, 2010, as part of the collection process, Defendant requested and obtained Plaintiff's consumer credit report from the credit reporting agency Equifax using the account information (*i.e.*, the cardholder's name and social security number) provided by Chase. *Id.* ¶ 10. The parties do not dispute that Plaintiff never authorized Defendant to conduct a credit inquiry. *Id.* ¶ 4(d). That same day, Defendant provided Plaintiff with a notice setting forth the amount of the debt, the name of the creditor to whom the debt was owed, and the other information required by 15 U.S.C. § 1692g. *Id.* ¶ 11. Several weeks later, Plaintiff requested validation of the debt from Defendant, which was provided on December 17, 2010. *Id.* ¶¶ 12-13. Plaintiff returned the document she received from Defendant with handwritten comments on it. *Id.* ¶ 14.

On December 28, 2010, Plaintiff's account with Chase was closed, and, as a result, Chase recalled the account from Defendant. *Id.* ¶ 15. Approximately one (1) month later, Plaintiff contacted Defendant and Chase and claimed that the validation provided by Defendant on December 17 was not sufficient. *Id.* ¶ 16.

More than a year passed during which there was no correspondence between the parties. Then, sometime in or around June 2012, Plaintiff viewed a copy of her consumer credit report through Equifax. App. to Def.'s Concise Stmt. of Material Facts, Ex. 1, at 17 (ECF No. 28-1). The report revealed Defendant's November 6, 2010, inquiry under the heading, "Inquiries that <u>may</u> impact your credit rating." *Id.* (emphasis added). On June 20, 2012, Plaintiff, apparently

believing that Defendant's unauthorized inquiry had adversely affected her credit score,[1] sent

Defendant a letter seeking information about the inquiry.  Def.'s Concise Stmt. of Material Facts

¶¶ 4(b), 17.  As a result of the letter, Defendant had the credit inquiry removed on or about June

29, 2012.  *Id.* at ¶ 18.

On November 26, 2012, Plaintiff brought this action, *pro se*, pursuant to the Fair Credit

Reporting Act ("FCRA" or the "Act"), 15 U.S.C. § 1681, *et seq*.  She alleges that Defendant

lacked a permissible purpose for inquiring into her credit history and that Defendant's conduct

was either willful or negligent, thereby violating the FCRA.  Compl. ¶¶ 6, 11, 15 (ECF No. 1).

Defendant filed its Answer on December 20, 2012, denying the material portions of Plaintiff's

allegations. (ECF No. 3).  After the close of discovery, Defendant filed the instant motion for

summary judgment, in which it argues that there is no evidence of a willful violation of the

FCRA because it had a permissible purpose for obtaining Plaintiff's consumer report, namely for

assistance in collecting a debt.  (ECF No. 26).  Defendant also argues that Plaintiff cannot prove

a negligent violation because she failed to establish that she suffered actual damages.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted if,

drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986) (internal quotation marks

omitted).

---

[1] Plaintiff has not produced any evidence that Defendant's credit inquiry caused her to lose any
credit opportunities and refused to respond to discovery requests related to her subsequent
attempts to obtain credit.  App. to Def.'s Concise Stmt. of Material Facts, Ex. 1, at 9 (ECF No.
28-1).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id*. at 247-48. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, *i.e.*, the material facts, however, will preclude summary judgment. *Id*. at 248. Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. In determining whether the dispute is genuine, the court's function is not to weigh the evidence but rather to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. It is on this standard that the Court has reviewed the motion and responses filed by the parties.

### III. Legal Analysis

#### A. Sufficiency of Kim Flitt's Affidavit

As a preliminary matter, the Court must determine the sufficiency of the affidavit of Kim Flitt, which Defendant has attached in support of its motion for summary judgment and from which most of the factual record has been developed. Plaintiff attempts to create a genuine issue of material fact by attacking the affidavit as containing, *inter alia*, "hearsay, unauthenticated, unverified, and invalidated unsworn conclusions of law." Pl.'s Br. at 7 (ECF No. 30). Defendant did initially attach an unsigned version of Flitt's affidavit to its concise statement of material facts. (ECF No. 28-2). However, on July 12, 2013, Defendant corrected its initial error by way of an errata sheet containing a properly executed affidavit. (ECF No. 32). Although Plaintiff is correct in asserting that the Court should generally not consider an unsworn statement in deciding a motion for summary judgment, *see Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005), it may substitute a properly executed affidavit for a deficient one prior to making its ruling, *see Mid-Continent Cas. Co.*, 742 F. Supp. 2d 1293, 1306 (S.D. Fla. 2010)

(refusing to grant motion to strike affidavit where party inadvertently filed an unsigned version of the affidavit and later filed a properly executed version).  There is no reason to believe that Defendant's failure to initially attach a signed affidavit was anything other than inadvertent. Therefore, the Court will substitute the subsequently filed affidavit signed by Flitt in place of the original.

Additionally, insofar as Plaintiff argues that the affidavit is insufficient because Flitt lacks personal knowledge and because Flitt's statement is not based on facts that would be admissible at trial, the Court disagrees.  As the affidavit makes clear, it is based on "account notes" maintained by Defendant in the ordinary course of business, which "reflect the events transpiring with the account from inception to completion."  App. to Def.'s Concise Stmt. of Material Facts, Ex. 2 (ECF. No. 28-2).  These "account notes" would likely be admissible hearsay as a record of a regularly conducted activity under Fed. R. Evid. 803(6).  Plaintiff also argues that Flitt is incompetent to testify regarding the accounts notes because she is not the custodian of the records.  However, Defendant need not produce the custodian of such records in order to establish the grounds for their admissibility.  Instead, Defendant need only produce a "qualified witness," which Flitt appears to be based on her position within Defendant's company. *See id.*  For those reasons, the Court finds that the affidavit is sufficient, and the Court will consider it in the determination of Defendant's motion.

B.      Plaintiff's FCRA Claim

The essence of Plaintiff's claim is that Defendant obtained her credit report while lacking a legitimate purpose sanctioned by the FCRA.  Defendant argues that it was permitted to obtain the report for assistance in the collection of a debt, which Defendant contends is a permissible purpose pursuant to 15 U.S.C. § 1681b(a)(3)(A).  The Court agrees.

Congress enacted the FCRA for the dual purposes of promoting an efficient banking system and "protect[ing] consumer privacy." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001).  In accordance with the latter purpose, the Act imposes liability for both willful and negligent noncompliance, which includes obtaining a credit report for an impermissible purpose. *See* 15 U.S.C. § 1681n (willful noncompliance); 15 U.S.C. § 1681o (negligent noncompliance).  The FCRA enumerates several purposes for which a credit report may be obtained. *See* 15 U.S.C. § 1681b.  For example, a reporting agency is expressly authorized to distribute a consumer report to a person who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." *Id.* § 1681b(a)(3)(A).

Relying on the "collection of an account" language in § 1681b(a)(3)(A), courts – including our own appellate court – appear to be uniform in their agreement that a debt collector is permitted to obtain a consumer credit report for the purpose of collecting an outstanding debt. *See, e.g.*, *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Norman v. Northland Grp. Inc.*, 495 Fed. Appx. 425, 427 (5th Cir. 2012); *Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 08-4708 (RMB/KW), 2010 WL 1931135, at *8 (E.D. Pa. May 12, 2010); *Hinkle v. CBE Grp.*, No. 11-091, 2012 WL 681468, at *3 (S.D. Ga. Feb. 3, 2012); *Pyle v. First Nat'l Collection Bureau*, No.12-00288–AWI–SKO, 2012 WL 1413970, at *3 (E.D. Cal. April 23, 2012); *Tonini v. Mandarich Law Grp., LLP*, No. 12-637 WQH (WMC), 2012 WL 2726761, at *4 (S.D. Cal. July 9, 2012).

Plaintiff relies on *Pintos v. Pacific Creditors Ass'n*, 565 F.3d 1106 (9th Cir. 2009) in support of her argument that debt collection is not necessarily a permissible purpose under the FCRA, but *Pintos* is distinguishable from the instant case.  In *Pintos*, the plaintiff's car was

towed, and the towing company obtained a lien for the costs of towing and impound. *Id.* at 1110. The company eventually sold the car after the plaintiff failed to reclaim it or pay the related charges. *Id.* Because the sale price was less than the amount owed, the company asserted a deficiency claim against the plaintiff. *Id.*  The claim was subsequently transferred to the defendant collection agency, which pulled plaintiff's credit report as part of the collection process. *Id.* at 1110-11.

The question in *Pintos* was whether "the transaction was 'a credit transaction involving' [the plaintiff]," thereby permitting the collection agency to obtain the report. *Id.* at 1112 (quoting 15 U.S.C. § 1682b(a)(3)(A)).  The Ninth Circuit Court of Appeals explained that someone is "involved in a credit transaction" within the meaning of the Act only when she is "draw[n] in as a participant in the transaction." *Id.* (bracket in original and internal quotation marks omitted).  Reasoning that the plaintiff did not seek out credit from the towing company – let alone have any contact with either the towing company or the collection agency prior to having her car towed – the court of appeals found that she "did not initiate the transaction" that led the defendant to obtain her credit report. *Id.* at 1113.  Thus, she was not involved in a credit transaction within the meaning of the Act, and the defendant lacked a proper basis for seeking the report. *Id.* at 1113-14.

By contrast, in this case, the consumer transaction clearly involved Plaintiff.  She was not unwittingly brought into the transaction, as was the case in *Pintos*.  Instead, she sought and obtained credit from Chase, *i.e.*, she *initiated* the transaction.  This transaction led directly to Defendant's inquiry into Plaintiff's credit history as part of its effort to collect on the outstanding debt.  The inquiry, therefore, fell squarely within the parameters of § 1681b(a)(3)(A). *See Huertas*, 641 F.3d at 34.

Plaintiff makes several other arguments as to why Defendant's motion should be denied, none of which the Court finds persuasive. First, she seems to suggest that because she never had a contractual relationship with Defendant, or any other form of firsthand dealings, Defendant was prohibited from obtaining her credit report. Pl.'s Br. at 4 (ECF No. 30). However, as the District Court for the Southern District of Georgia has persuasively explained:

> it is not necessary for Plaintiff to have had direct dealings with Defendant. [I]f a collection agency . . . is retained by a creditor to collect a debt owed by a consumer, then it typically has a permissible purpose for obtaining a consumer report in conjunction with its collection activities, so long as it seeks to use information in connection with a transaction initiated with the creditor.

*Hinkle*, 2012 WL 681468, at *3.

Next, Plaintiff argues that the definition of "account" under the FCRA does not include credit card accounts. Pl.'s Br. at 7 (ECF No. 30). Section 1681a(r) of the FCRA defines the term "account" with reference to the definition in § 903 of the Electronic Fund Transfer Act ("EFTA"). *See* 15 U.S.C. § 1681a(r)(4). Under § 903 the EFTA, "the term 'account' means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this title) . . . ." 15 U.S.C. § 1693a(2). Plaintiff argues that the language in the parenthetical exempts credit card accounts from the definition of accounts. Thus, Plaintiff argues that § 1681b(a)(3)(A), which permits a person to request a credit report for "review or collection of an account[,]" could not have permitted Defendant to pull Plaintiff's credit report as part of its effort to collect on Plaintiff's unpaid *credit card* debt.

Our appellate court has not directly addressed the meaning of the term "account" as used throughout the FCRA. However, it is instructive that *Huertas* involved credit card debt, and the court of appeals nonetheless held that § 1681b(3)(A) permitted the use of a consumer credit

report to collect on that unpaid debt.  *See Huertas*, 641 F.3d at 34.  Furthermore, several district courts outside the Third Circuit have expressly considered Plaintiff's argument with regard to the meaning of the term "account" and soundly rejected it.  *See, e.g.*, *Jagos v. Law Firm of Allen C. Smith*, *PC*, No. 12-13206, 2013 WL 3895454, at* 4 (E.D. Mich. July 29, 2013) (internal citations omitted) ("Plaintiffs entered into a credit transaction by applying for a Visa credit card from Wells Fargo Bank, N.A. Defendants were thus permitted . . .  to request Plaintiff's credit reports . . . ."); *Demaestri v. Asset Acceptance Capital Corp.*, No. 11–CV–01671–72–WJM–MJW, 2012 WL 1229907, at *5 (D. Colo. Mar.14, 2012) *report and recommendation adopted by DeMaestri v. Asset Acceptance Capital Corp.*, 11–CV–01671–72 WJM–MJW, 2012 WL 1229940 (D. Colo. Apr.12, 2012) ("Read correctly, § 1681 b(a)(3)(A) permits the defendant to obtain the plaintiff's consumer reports" in relation with the collection of a credit card debt.); *Pyle*, 2012 WL 1413970, at *5 ("Plaintiff's contention that Defendant could not obtain Plaintiff's credit report to collect credit card account debt is baseless.") (internal citation omitted).

The Court finds those decisions persuasive. While the cross-reference in 15 U.S.C. § 1681a(r)(4), applied literally, may suggest that credit card accounts are excluded from the FCRA's definition of "account," the Court of Appeals for the Third Circuit has warned that "literalism may not be the appropriate canon of statutory construction" when dealing with cross-referenced definitions. *Crilly v. Southeastern Penn. Trans. Auth.*, 529 F.2d 1355, 1359 (3d Cir. 1976).  Such is the case here.  Instead, the meaning of the term must be gleaned in light of the broader context of the statute in which it appears.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 345 (1997).  The broader context of the FCRA confirms that Plaintiff's interpretation is untenable, as several sections clearly contemplate that the term "account" encompasses credit card accounts.  *See, e.g.*, 15 U.S.C. § 1681m(d)(4)(e)(1)(A) (granting federal banking agencies

the power "to prescribe regulations applicable to card issuers to ensure that, if a card issuer

receives notification of a change of address for an existing account, and within a short period of

time (during at least the first 30 days after such notification is received) receives a request for an

additional or replacement card for the same account, the card issuer may not issue the additional

or replacement card). Indeed, it would make little sense if a statute whose stated purpose is "to

require that consumer reporting agencies adopt reasonable procedures for meeting the needs of

commerce for <u>consumer credit</u>," 15 U.S.C. § 1681 (emphasis added), did not apply to credit card

accounts.

      Finally, Plaintiff argues that Defendant has failed to prove the existence of the underlying

debt with Chase. This argument is also without merit. As this Court explained in its

Memorandum Order denying Plaintiff's motion to compel discovery responses, "Plaintiff is not

entitled to any validation from Defendant that a debt existed." Mem. Order, May 2, 2013, at 3

(ECF No. 24). It is well settled that a debt collector need not "verify a debt prior to collection."

*Slanina v. United Recovery Sys.*, No. 11-1391, 2011 WL 5008367, at *2 (M.D. Pa. Oct. 20,

2011). It was for this reason that the Court refused to compel Defendant to verify Plaintiff's

obligation to Chase or produce any other information related to the alleged debt. Mem. Order,

May 2, 2013, at 3 (ECF No. 24). Thus, Plaintiff is foreclosed from now arguing that Defendant

is not entitled to summary judgment because it failed to produce that which the Court previously

held that it had no obligation to produce.

      Furthermore, even if Defendant were required to prove the existence of the debt, there is

sufficient evidence in the record to show that Plaintiff applied for and opened the account in

question. In particular, Defendant has produced several account statements from Chase

Cardmember Service addressed to Plaintiff's home address. App. to Def.'s Concise Stmt. of

Material Facts, Ex. D (ECF No. 28-2).  "[T]he only reasonable and plausible explanation" for the existence of these statements "is that Plaintiff[] applied for the account."  *See Jagos*, 2013 WL 3895454, at *5; *see also Scott v. Harris*, 550 U.S. 372, 381 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

    In sum, the Court finds that Defendant possessed a permissible purpose for obtaining Plaintiff's credit report, and thus Plaintiff cannot establish a violation of the FCRA.  Because Defendant has not violated the FCRA, Plaintiff has no basis for holding Defendant liable under either 15 U.S.C. § 1681n or 15 U.S.C § 1681o.  *See Gonzalez v. Continental Serv. Grp., Inc.*, No. 12-553-A, 2013 WL 3810811, at *3 (N.D. Tex. July 23, 2013) (holding that there is no liability under the FCRA if defendant has a permissible purpose for obtaining plaintiff's credit report).

## IV.    Conclusion

    For the reasons hereinabove set forth, the Defendant's motion for summary judgment as to both counts of Plaintiff's Complaint will be **GRANTED**.

    An appropriate Order follows.

                                        McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| **NORMA DIANE FRITZ,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **2:12-cv-1725** |
| | ) |
| **CAPITAL MANAGEMENT SERVICES, LP,** | ) |
| **Defendant.** | ) |
| | ) |

## <u>ORDER OF THE COURT</u>

AND NOW, this 29th day of August, 2013, for the reasons set forth in the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that

DEFENDANT CAPITAL MANAGEMENT SERVICES, LP'S MOTION FOR SUMMARY

JUDGMENT is **GRANTED** as to both counts of Plaintiff's Complaint.  The Clerk shall docket

this case closed.


BY THE COURT:


<u>s/ Terrence F. McVerry</u>
United States District Court Judge


cc:     **Norma Diane Fritz**
        5124 College Street
        Finleyville, PA 15322

        **Richard J. Perr, Esq.**
        Email: rperr@finemanlawfirm.com